## MILTON v ROBBINS, et al.

Case No. 88-23451 (21)

Eleventh Judicial Circuit, Dade County

April 20, 1990

### APPEARANCES OF COUNSEL

**John Fletcher, Esquire,** for plaintiff.

**Robert A. Ginsburg, Esquire,** County Attorney, **Thomas W. Logue, Esquire** and **James K. Kracht, Esquire,** Assistant County Attorneys, for defendant.

### OPINION OF THE COURT

JOHN A. TANKSLEY, Circuit Judge.

### *FINAL JUDGMENT*

This case was tried non-jury by this Court on March 7, 1990. At the

close of trial the parties were each given 15 days to file written closing arguments and an additional five days thereafter to file written responses to their opponent's closing arguments. Having considered the evidence presented and the arguments of counsel and being otherwise advised of the premises, the Court makes the following findings of fact and conclusions of law:

1. This is a case filed by a taxpayer, Jose Milton, challenging the 1987 ad valorem property tax on his property known as the Beverly Hills Club Apartments. The subject, taxable property consisted of 4 apartment buildings totalling 450 units, a swimming pool, recreational building, two level parking garage, and 16.65 acres of land. Two additional apartment buildings, buildings five and six consisting of a total of an additional 240 units, were still under construction on the assessment date of January 1, 1987 and are therefore not taxable and were not assessed.

2. The parties stipulated that the only issue in the case concerns the value of the assessment. The Property Appraiser assessed the subject, taxable property at $14,501.407. The taxpayer's expert valued the subject, taxable property at $8,150,000.

3. The Property Appraiser's assessment is clothed with a presumption of correctness, which can only be overcome by proof that "the appraiser departed from the requirements of law or that the appraisals made was not supported by any reasonable hypothesis of legality." *Blake v Xerox*, 447 So.2d 1348, 1350 (Fla. 1984).

4. In challenging the assessment, the taxpayer in this case relied primarily on the testimony of an accomplished and professional appraiser. Having heard the taxpayer's expert explain his opinions, and having weighed the inconsistencies in his testimony, the Court finds as a matter of fact that the opinion of the taxpayer's expert as it pertains to this particular case is not persuasive. For example, in his cost approach, the expert depreciated brand new buildings, and even buildings still under construction. In his market approach, he failed to use standard benchmarks such as price per square foot or price per unit. Significantly, when analyzed based on these standard benchmarks, the expert's own comparable sales support the assessment.

5. Moreover, Taxpayer's expert's opinion of value is based solely on the income approach. Taxpayer did a cost approach and a market approach for the projected 690 units, reaching values of $22,745,000 and $23,000,000, respectively. He never adjusted these figures, however,

to reach values for the subject, taxable 450 units. Indeed, as is evident from the above mentioned numbers and from the other testimony at trial, if taxpayer's expert had adjusted these market and cost based values to reflect the value of the subject, the resulting numbers would more than support the assessment.

6. As a matter of law, testimony based only on the income approach is not sufficient to overturn an assessment. In *St. Joe Paper Co. v Brown*, 210 So.2d 725, 728 (Fla. 1st DCA 1968) (italics added), the Court rejected the proposition that "evidence consisting of [an] expert witness's opinion as to value of forestry lands *based solely on the income method* of valuation was sufficient to establish a prima facie case of an illegal assessment. . ." Instead the Court held:

Inasmuch as the appellant confined its evidence of value of the forestry lands to the income method only and chose not to proceed with evidence respecting the other criteria also, as is required under the Supreme Court's *Markham* case, it is our view that the trial court correctly held that appellant had failed to make out a prima facie case as to illegal, excessiveness of the assessment on its forestry lands.

210 So.2d at 727-28.

7. Furthermore, examination of Taxpayer's expert's income approach reveals a major flaw. Taxpayer's expert used the actual income for *1986* of $634,110 to project the income for the critical year *1987.* The actual income in 1987, however, was $2,362,096. The expert made his appraisal in 1989 and knew the actual 1987 income so there was no need for him to "project" the 1987 income. As it is, his projection is off by a factor of four, which causes his income approach to seriously under-value the property.

8. This error in projecting the 1987 income cannot be justified. An investor considering the value of this property on January 1, 1987 would know that the 1986 income would not reflect the 1987 income. In the first place, many of the taxable 450 units were still under construction and were not available for occupancy in 1986. Secondly, the taxpayer himself provided numbers for rent and occupancy to taxpayer's expert indicating that on January 1, 1987 there were 281 units rented (out of a total of 450 available units on that date) and that the average rent was $451 dollars. This calculates out to an annual rent of $1,520,772. This number would be the minimum rent since the property was still in the process of being rented up. Thus, it would be clear to any investor or appraiser that the 1987 income would vastly exceed the 1986 income. In these circumstances, it was a major flaw

**215**

for the taxpayer's expert to use the 1986 income to "project" after-the-fact an income which he knew was less than the actual 1987 income.

9. Turning to the Property Appraiser's evidence, the record reflects, and the Court hereby finds, that the Property Appraiser considered all the factors of section 193.011, Fla. Stat. in reach the assessment. Specifically, he relied on the cost, income, and market approaches to value. Since charts were entered into evidence detailing the Property Appraiser's analysis as to each approach, it is unnecessary to summarize that evidence here.

10. Finally, the court notes that the record contains substantial, independent evidence that the assessment is in the range of reasonable values. The Taxpayer's own financial statement of November, 1986 values the improvements on the property alone at $22 million. The Taxpayer's architect's specifications place a total cost on the property at $28,472,494. Since it values buildings 5 and 6 separately, it is easy to subtract out of the value of those buildings. The resulting number of $20 million more than supports the assessment. The loan committee report by New York Life Insurance Company, entered into evidence without objection, values the project at $32 million. Indeed, the Taxpayer took out a loan on the property in 1987 in the amount of $24 million. All of these facts indicate that the assessment of $14,501,407 does not exceed the bounds of a reasonable hypothesis of a legal assessment.

ACCORDINGLY, it is hereby ORDERED AND ADJUDGED that the 1987 assessment on this property was lawful and will remain unchanged; that plaintiff Jose Milton takes nothing by this action; that defendants Property Appraiser, Tax Collector, and Director of the Department of Revenue go hence without day. The court reserves jurisdiction to tax costs.

Done and Ordered in Chambers this 20th day of April, 1990.